IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 2:23-cr-20083-SHL |
| ) | |
| ERICK WILLIAMS, ) | |
| ) | |
| Defendant. ) | |

**ORDER DENYING DEFENDANT'S MOTION TO DISMISS INDICTMENT**

Before the Court is Defendant Erick Williams's Motion to Dismiss Indictment (ECF No. 21), filed August 3, 2023. The United States filed its Response on August 17. (ECF No. 23.) Although the Court acknowledges the importance of reinstating rights for previously convicted felons, both Sixth Circuit precedent and Supreme Court dicta do not currently extend the Second Amendment "right" to keep and bear arms to former felons. For the following reasons, Williams's Motion is **DENIED**.

### BACKGROUND

According to the Government, on May 11, 2022, Williams was pulled over after going sixty-five (65) miles per hour in an area with a speed limit of forty-five (45) miles per hour. (ECF No. 23 at PageID 42.) Officers saw an open beer can in the cup holder and smelled marijuana as they approached the vehicle. (Id.) A .40 caliber Smith and Wesson pistol was found in the ensuing search of the vehicle. (Id.) Agents later determined that this pistol was manufactured outside of Tennessee and therefore must have crossed state lines, and, in doing so, affected interstate commerce. (Id.)

A grand jury indicted Williams, someone who had previously been convicted of a crime punishable by imprisonment for a term exceeding one year, for knowingly possessing a firearm in violation of 18 U.S.C. § 922(g)(1). (ECF No. 2 at PageID 2.) Williams filed this Motion, arguing that dismissal is justified because § 922(g)(1) is facially unconstitutional and unconstitutional as applied to him in the wake of the Supreme Court's opinion in N.Y. State Rifle & Pistol Ass'n, Inc. v. Bruen, 142 S. Ct. 2111 (2022). (ECF No. 21 at PageID 35–36.)

## LEGAL STANDARD

A defendant may move to dismiss an indictment if he believes it "fails to invoke the court's jurisdiction or to state an offense." Fed. R. Crim. P. 12(b)(3)(B); United States v. Hackworth, 483 F. App'x 972, 979 (6th Cir. 2012). In ruling on a motion to dismiss, a court views the indictment as a whole and accepts its factual allegations as true. See United States v. Palma, 58 F.4th 246, 250 (6th Cir. 2023).

Here, Williams brings both facial and as-applied challenges. "'A facial challenge to a law's constitutionality is an effort to invalidate the law in each of its applications, to take the law off the books completely.'" Green Party of Tenn. v. Hargett, 791 F.3d 684, 691 (6th Cir. 2015) (quoting Speet v. Schuette, 726 F.3d 867, 871 (6th Cir. 2013)). To succeed on such a claim, the party challenging the statute "must establish that no set of circumstances exist[s] under which [the statute] would be valid." Id. (internal quotation marks omitted). "If even one set of circumstances exists in which the state can constitutionally apply the statute[] to [felons], [Williams's] claim fails." See id. at 692. An as-applied challenge, meanwhile, "argues that a law is unconstitutional as enforced against the [defendant] before the court." Id. (internal quotation marks omitted).

2

## ANALYSIS

This Court first acknowledges the uniqueness of ruling on this motion to dismiss after the defendant has already pled guilty. (See ECF No. 28 at PageID 57.) However, that guilty plea has no impact on the conclusion reached by the Court in this Order. The Court recently decided two nearly identical challenges to the constitutionality of 18 U.S.C. § 922(g)(1). See United States v. Vaughn, No. 2:21-cr-20250 (W.D. Tenn. May 10, 2023); United States v. Parham, No. 2:21-cr-20181 (W.D. Tenn. May 11, 2023) (orders denying the applicable defendant's motion to dismiss indictment). While there have been more non-binding district court and court of appeals opinions on this issue published over the last few months, this Court's analysis has not changed since its previous orders.

I.   Historical Evolution of Second Amendment Jurisprudence

Williams's challenge centers on ever-evolving interpretations of the Second Amendment. The Amendment provides that "[a] well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const. amend. II. In settled precedent that lasted for nearly a century, the Supreme Court adopted a "collective right" model of the right encompassed in the Amendment, which held "that the Second Amendment grants the people a collective right to an armed militia." See Carl T. Bogus, The History and Politics of Second Amendment Scholarship: A Primer, 76 Chicago-Kent L. Rev. 3, 3–4 (2000) (citing United States v. Cruikshank, 92 U.S. 542 (1876); Presser v. Illinois, 116 U.S. 252 (1886); United States v. Miller, 307 U.S. 174 (1939)).

In D.C. v. Heller, 554 U.S. 570 (2008), however, the Court discarded this precedent and instead adopted an "individual right" model, concluding that the Second Amendment "guarantee[s] the individual right to possess and carry weapons in case of confrontation." Id. at

3

592. In reaching this conclusion, the Court reasoned that, "it has always been widely understood that the Second Amendment, like the First and Fourth Amendments, codifies a *pre-existing* right." Id. (emphasis in original). The Court noted, however, that, like other individual rights, "the right secured by the Second Amendment is not unlimited." Id. at 626. Most relevant for Williams, the Court stated, in dicta, that "[t]he Court's opinion should not be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons . . . ." Id.

The Courts of Appeals responded to Heller's sea change in Second Amendment jurisprudence by developing a two-step analysis when considering constitutional challenges to gun regulations. Bruen, 142 S. Ct. at 2125. Under the first step, the Government could respond to a challenge by "establishing that the challenged law regulates activity falling outside the scope of the rights as originally understood." Id. at 2126 (quoting Kanter v. Barr, 919 F.3d 437, 441 (7th Cir. 2019)). If the conduct fell outside the scope of the Amendment's protections as understood by its original meaning, the analysis stopped and the challenge failed because the conduct was simply unprotected. Id. If the conduct fell within the Amendment's ambit, the court proceeded to step two.

In step two, the court would typically analyze "how close the law comes to the core of the Second Amendment right and the severity of the law's burden on that right." Id. (quoting Kanter, 919 F.3d at 441). If a core right was burdened, the court would apply strict scrutiny in assessing the regulation. Id. All other burdened rights would receive an intermediate scrutiny standard of review. Id.

Bruen jettisoned this consensus among the appellate courts, holding that, "[d]espite the popularity of this two-step approach, it is one step too many." Id. at 2127. Instead, the Court provided the following standard:

4

> When the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. The government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation. Only then may a court conclude that the individual's conduct falls outside the Second Amendment's unqualified command.

Id. at 2129–30 (internal quotation marks omitted). Thus, while the Court theoretically eschewed a two-step approach, trial courts must still analyze firearm regulation challenges in two-steps, assessing: (1) whether the Second Amendment's plain text covers the individual's conduct; and (2) if so, whether the regulation is consistent with the historical tradition of firearm regulation in the United States. See United States v. Charles, No. MO:22-CR-00154-DC, 2022 WL 4913900, at *2 (W.D. Tex. Oct. 3, 2022) (characterizing the plain text analysis as a "threshold question").

II.    Scope of the Second Amendment Right

It is undoubtedly a difficult, nay, impossible task to thread a needle when its eye is too narrow for the string. On the one hand, this Court realizes the unquestioned validity of treating citizens who have previous felony convictions the same as other Americans when it comes to the rights and privileges they deserve, including areas with historical barriers like the right to vote, but see Richardson v. Ramirez, 418 U.S. 24, 55–56 (1974), and the right to serve on a jury, but see 28 U.S.C. § 1865(b)(5). On the other hand, however, the eye of the Second Amendment needle is still not wide enough to encapsulate former felons.

In fact, the vast majority of qualified historians believe the eye of the needle should have stayed so narrow as to include only the militia-centric rights protected by Miller. 307 U.S. at 178–79 (deeming short-barreled shotguns outside the protection of the Second Amendment by evaluating whether the firearm was an ordinary military rifle and whether its "use could contribute to the common defense"). "'An overwhelming majority of historians' reject the Supreme Court's most fundamental Second Amendment holding—its 2008 conclusion that the

5

Amendment protects an individual right to bear arms, rather than a collective, Militia-based right." United States v. Bullock, No. 3:18-CR-165, 2023 WL 4232309, at *5 (S.D. Miss. June 28, 2023) (quoting Patrick J. Charles, The "Reasonable Regulation" Right to Arms: the Gun-Rights Second Amendment before the Standard Model, in A Right to Bear Arms? The Contested Role of History in Contemporary Debates on the Second Amendment 168 (Tucker, et al., eds., 2019)).  And, if Bruen has taught us anything, it is that historical analysis–a skillset that judges[1] do not possess because "[w]e are not trained as historians" and "do not have historians on staff"– is the key ingredient in evaluating whether a firearms regulation passes constitutional muster. See Bullock, 2023 WL 4232309, at *4.  In an ideal world, courts would be mindful of the aforementioned analysis conducted by historians when evaluating firearms regulations.

Turning to Bruen's first step, Williams argues that he is covered by the "plain text" of the Second Amendment as he avers that the Amendment grants all Americans a right to bear arms. (ECF No. 21 at PageID 36.)  The Government counters that Williams's challenge fails because, as a convicted felon, he falls outside the Amendment's protected "people."  (ECF No. 23 at PageID 45–46.)  As an initial matter, there is no apparent dispute that possession of a firearm is presumptively protected by the Second Amendment, nor that the handgun found in Williams's vehicle is a firearm within the meaning of the Amendment.  The issue here is rather the scope of the "plain text" of "people" in the Second Amendment.

---

[1] While not a historian, Chief Justice Warren Burger thought the possibility of broadening the Second Amendment beyond the militia-focused holding of Miller was "one of the greatest pieces of fraud–I repeat the word fraud–on the American public by special interest groups that I have ever seen in my lifetime."  See Bullock, 2023 WL 4232309, at *6; Nina Totenberg, From 'Fraud' to Individual Rights, Where Does the Supreme Court Stand on Guns?, NPR (Mar. 5, 2018, 2:55 PM), https://www.npr.org/2018/03/05/590920670/from-fraud-to-individual-right-where-does-the-supreme-court-stand-on-guns [https://perma.cc/YCJ9-WSSZ].

The Government points to the dicta[2] in Heller, where the Supreme Court stated, "[a]lthough we do not undertake an exhaustive historical analysis today of the full scope of the Second Amendment, nothing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons . . . ." Heller, 554 U.S. at 626. The Government also relies on Bruen's repeated use of the word "law-abiding" [3] when discussing the protections found in the Second Amendment, (ECF No. 23 at PageID 45–46 (citing Bruen, 142 S. Ct. at 2122, 2131, 2133, 2134, 2138, 2150, 2156)), as well as Justice Kavanaugh's concurrence, joined by Chief Justice Roberts, which included the dicta from Heller involving felons, (ECF No. 23 at PageID 46 (citing Bruen, 142 S. Ct. at 2162 (Kavanaugh, J., joined by Roberts, C.J., concurring))).

Williams argues that the Court made it clear in Heller that the right of the people "unambiguously refers to all members of the political community, not an unspecified subset." (ECF No. 21 at PageID 36 (citing Heller, 554 U.S. at 580).) Williams avers that this conclusion is further supported by post-Bruen non-binding authority that proclaims "all Americans" are a part of the "people [who] have the right to keep and bear arms." (ECF No. 21 at PageID 36 (citing Range v. Att'y Gen. United States, 69 F.4th 96, 101–02 (3rd Cir. 2023).)

Williams also points to both the Third Circuit and Supreme Court's comparisons between the Second and First, Fourth, and Ninth Amendments. (ECF No. 21 at PageID 36.) In Heller,

---

[2] It is important to note that, while this Court cautiously views the relevant Heller passage as dicta, that stance is not universally adopted by all courts. See United States v. Rozier, 598 F.3d 768, 771 n.6 (11th Cir. 2010) (asserting that the portion of Heller that limits firearm possession to law-abiding individuals is not dicta).

[3] This repeated use of "law-abiding" contrasts sharply with Williams's unfounded assertion that the "'law abiding citizen' notion is not mentioned in Justice Thomas' opinion in Bruen." (ECF No. 21 at Page ID 37.)

7

the Court stated that the phrase "the people" as it is found in the First, Fourth, and Ninth Amendments, "unambiguously refer[s] to individual rights, not 'collective' rights, or rights that may be exercised only through some participation in some corporate body." Heller, 554 U.S. at 579. He argues that the Court's holding that the Second Amendment protects an individual right to possess a firearm thus places its use of "the people" in line with these other amendments which apply to all Americans and which may not be denied. (ECF No. 36 at PageID 36.)

This Court is thus presented with the following question: "are prohibited persons' Second Amendment rights nonexistent, or just defeasible? Or, to put it another way, are these persons' rights *void*, or merely *voidable*?" Jacob D. Charles, Defeasible Second Amendment Rights: Conceptualizing Gun Laws that Dispossess Prohibited Persons, 83 L. & Contemp. Probs. 53, 54 (2020) (emphasis in original).[4] Based on current Supreme Court precedent, the Court is bound to pick the former option to answer each question.

The analysis begins with the language of the Bruen standard itself: "when the Second Amendment's *plain text* covers an individual's conduct, the Constitution presumptively protects that conduct." Bruen, 142 S. Ct. at 2129–30 (emphasis added). The Second Amendment refers to "the right of *the people* to keep and bear Arms . . . ." U.S. Const. amend. II (emphasis added).

---

[4] Then-Judge Barrett also framed the issue in a widely cited dissent, writing, "[t]here are competing ways of approaching the constitutionality of gun dispossession laws. Some maintain that there are groups of people—for example, felons—who fall entirely outside the Second Amendment's scope. Others maintain that all people have the right to keep and bear arms but that history and tradition support Congress's power to strip certain groups of that right. These approaches typically yield the same result; one uses history and tradition to identify the scope of the right, and the other uses that same body of evidence to identify the scope of the legislature's power to take it away." Kanter, 919 F.3d 437, 451–52 (Barrett, J., dissenting).

At first blush, the plain text of the Second Amendment provides an individual right, as decided in Heller, to all Americans.

But the inquiry does not end here.  As the Government argues, the Court in Heller explicitly stated that the individual right conferred by the Second Amendment "is not unlimited" and noted that the right is "not a right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose." Heller, 554 U.S. at 626.  Immediately following this limiting statement, the Court cautioned, albeit in dicta, that "[a]lthough we do not undertake an exhaustive historical analysis today of the full scope of the Second Amendment, nothing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons . . . ." Id.  These regulations are described as "presumptively lawful." Id. at 627 n.26.

The Court reiterated these limiting statements in McDonald v. City of Chicago, Ill., stating that, "[w]e made it clear in Heller that our holding did not cast doubt on such longstanding regulatory measures as prohibitions on the possession of firearms by felons . . . . We repeat those assurances here."  561 U.S. 742, 786 (2010).  And, in Bruen, the Court described the Second Amendment right as one that protects a "right to keep and bear arms" for "law-abiding citizens with ordinary self-defense needs."  142 S. Ct. at 2156.  Indeed, as the Government notes, the Court in Bruen regularly defined the right as only afforded to "law-abiding" citizens.  See, e.g., id. at 2138, 2150, 2156.  Justice Kavanaugh similarly reiterated Heller's dicta involving these "presumptively lawful" regulations in his concurrence.  Id. at 2162 (Kavanaugh, J., joined by Roberts, C.J., concurring).

Based on the repeated statements by the Supreme Court, this Court agrees with the Government that Williams, as a convicted felon, falls outside of the plain text scope of the rights afforded by the Second Amendment.  "By distinguishing non-law-abiding citizens from law-

9

abiding ones, the dicta in Heller and McDonald clarifies the bounds of the plain text of the Second Amendment." United States v. Ingram, No. 0:18-557-MGL-3, 2022 WL 3691350, at *3 (D.S.C. Aug. 25, 2022).  Furthermore, it is noteworthy that, in the Second Amendment cases before the Supreme Court, not one Justice has ever suggested that felon possession prohibitions are unconstitutional.  Such unanimity is striking in an area of law defined by sharp disagreement.

Ultimately, because courts in this circuit "are obligated to follow Supreme Court dicta, particularly when there is no substantial reason for disregarding it," United States v. Khami, 362 F. App'x 501, 508 (6th Cir. 2010), the Court concludes that Williams's right to bear arms is not protected by the Second Amendment because he is not covered by the Amendment's plain text, as a convicted felon.

   III.   Binding Effect of Pre-Bruen Precedent

The Court also agrees with the Government that it remains bound by Sixth Circuit precedent upholding § 922(g)(1) decided post-Heller but pre-Bruen.  In Khami, the Sixth Circuit rejected a defendant's facial challenge to § 922(g)(1) grounded in Heller's newly established individual right to bear arms.  362 F. App'x at 507–08.  There, the court adopted the same reasoning adopted here: the limiting dicta in Heller "carries significant weight" and shows that "Heller indicates that its holding does not bring into question the constitutionality of § 922(g)(1)."  Id. at 508.

To be sure, Bruen upended much of the post-Heller appellate precedent and its reliance on tiers of scrutiny.  But, arguably, "Bruen clarified and reiterated, rather than modified, the constitutional ruling in Heller."  Ingram, 2022 WL 3691350, at *2 (cleaned up).  Indeed, nothing in Khami relied on the now-abrogated tiers of scrutiny standards, as the Sixth Circuit instead held that Heller's dicta was sufficiently persuasive to indicate that § 922(g)(1)'s constitutionality

10

was not called into question by its holding. Sister district courts in the Sixth Circuit have recently come to the same conclusion and continue to hold steadfast that § 922(g)(1) does not violate a convicted felon's Second Amendment rights. See United States v. Miller, No. 1:22-cr-645, 2023 WL 6065116, at *4 (N.D. Ohio Sept. 18, 2023). Therefore, there is no reason why Bruen's subsequent holding would vacate Khami and relieve this Court of its binding precedent. As such, the Court remains bound to reject Williams's challenges to § 922(g)(1)'s constitutionality under Heller and Bruen.

IV. As-Applied Challenge

The crux of Williams's as-applied challenge revolves around rebellion and treason. (ECF No. 21 at PageID 38–39.) Williams insists that, at the time of this country's founding, those were the only two crimes that resulted in one losing his/her right to bear arms. (Id.) Since Williams has not participated in a rebellion or been treasonous to his country, then, Williams argues, his particular criminal history would not have prohibited him from owning a firearm in the eighteenth century. (Id. at PageID 39.) However, the Sixth Circuit has never made a narrow carve-out for these two semi-antiquated crimes that were much more common in 1776 than in 2023. This Court similarly refuses to treat rebellion and treason differently from other felony convictions.

Some circuits have explored the seriousness of the original felony conviction and whether that felon should be considered dangerous based on that prior conviction. When conducting such analysis, the Tenth Circuit found its corresponding precedent unshaken by Bruen in upholding a firearms ban "for *any* convicted felon's possession of a firearm," regardless of the seriousness of the underlying felony. Vincent v. Garland, 80 F.4th 1197, 1202 (10th Cir. 2023) (emphasis in original). However, Williams does not discuss the seriousness of his underlying felony

11

conviction (beyond the fact that he was not convicted of treason or rebellion), and thus the point need not be addressed by this Court. Williams's argument that 18 U.S.C. § 922 (g)(1) is unconstitutional as applied to him fails.

* * * *

Convicted felons deserve a fair shot at a second chance in life, and restrictions currently imposed on felons seeking to restart their lives outside of prison may stand in their way. Indeed, there is strong evidence that these post-conviction restrictions are "canaries in the coal mine of our criminal justice system, disenfranchising minorities and exacerbating mass incarceration." See Bullock, 2023 WL 4232309, at *19 n.22. However, decades worth of precedent on felon firearms restrictions cannot be upended based solely Bruen's lack of clarity, especially when "[s]ix of the nine Justices pointed out that Bruen was not casting any doubt on this language [prohibiting firearm possession by felons] in Heller." See Vincent v. Garland, 80 F.4th 1197, 1201 (10th Cir. 2023) (highlighting that Justices Alito, Kavanaugh, and Roberts (via concurrences) and Justices Breyer, Sotomayor, and Kagan (via dissent) took great pains to drive this point home).

Because the Court concludes that the Second Amendment does not confer a right to bear arms on Williams as a convicted felon, both Williams's facial and as-applied challenges to 18 U.S.C. § 922(g)(1) fail.

## CONCLUSION

For these reasons, Williams's Motion to Dismiss Indictment is **DENIED**.

**IT IS SO ORDERED**, this 8th day of November, 2023.

s/ Sheryl H. Lipman
SHERYL H. LIPMAN
CHIEF UNITED STATES DISTRICT JUDGE